SCHEIBE (BETTY), by Guardian, Respondent, vs. TOWN OF LINCOLN, Appellant.

*December 8, 1936—January 12, 1937.*

For the appellant there were briefs by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

For the respondent there was a brief by *Genrich & Genrich,* attorneys, and *Miles Lambert* and *Donald C. Heide* of counsel, all of Wausau, and oral argument by *F. W. Genrich.*

FAIRCHILD, J. The evidence shows that the highway at the point of accident was out of repair; that the duration of the defective condition was such as to fix knowledge thereof in the defendant and to afford opportunity for repair. The evidence also sustains the finding of the jury that plaintiff failed to exercise ordinary care at the time. The usually traveled width of the road had been made rough and dangerous by a washout, and reduced to an extent that there was left only a portion on the east side seven feet eight inches wide fit for use. Plaintiff in driving south had moved over to the east or left side (no other car was involved) when, in order to avoid hitting a cat, she turned to the west (right) far enough so that at least one of the wheels of her car was caught in a defect in the washed-out portion of the highway. This resulted in throwing her out of her position in the driver's seat. For an instant she could not touch the pedals, and before she regained control of the machine, it struck the corner of a bridge. Plaintiff was thrown against the windshield; her face was cut; some teeth were broken off and the bridge of her nose fractured. Both plaintiff and defendant were guilty of negligence and each contributed to the result. The jury compared the negligence of each party and upon the determination of the jury the court based the judgment.

The defendant asserts that the plaintiff was a trespasser upon the public highway. This claim is based on the fact that she was under sixteen years of age at the time, and is coupled with the claim that she was not a licensed driver. This assignment of error is not well founded. The testimony bearing upon this subject carries the inference that she had a license entitling her to drive an automobile belonging to her parents at the time in question, under sec. 85.08 (1a), Stats. She testified to having driven the summer before with her father, and a little through the winter, and "then I got that permit in October, 1934." She was fourteen years of age when she began driving with her father. There was no tes-

timony to show anything but a complete compliance with the statutes in such case made and provided. We understood the defendant to concede upon the argument here a compliance with sec. 85.08 (1a), Stats., but to insist that the closing sentence of that subsection fixes the responsibility upon the parent "for any and all damages growing out of the negligent operation of a motor vehicle by any such child." The final words of that subsection amount to a legislative declaration that when a parent consents to the use of his car by his child under the circumstances stated, he cannot claim that the child is a bailee of the car or, in driving it, that the child is acting independently of him in any sense of the word. The damages to be recovered by plaintiff from defendant under the judgment are the damages resulting from the negligence of the defendant only. There are no damages to the defendant growing out of her negligence.

The jury was asked to determine the proportion of negligence, so far as plaintiff is concerned, on the basis of speed and lookout. The defendant claims that a further consideration was the conduct of plaintiff in swerving or turning to avoid running over the cat. The parts of the instructions to which attention is particularly called read:

"You are instructed that if you find from the evidence that Betty, in attempting to avoid the cat which suddenly and unexpectedly appeared in the highway, involuntarily swerved the car too far that in itself would not be negligence on her part. You will determine from the whole evidence whether Betty was negligent by driving at an excessive rate of speed and without keeping a proper lookout. If you find her negligent in both or either of these two specifications of negligence you will answer the question 'Yes.' If you do not find her negligent either in excessive speed or by not keeping a proper lookout you will answer the question 'No.'" (Referring to question 4 of special verdict.)

"In considering this question whether Betty's negligence was a cause of the accident you should bear in mind that neither the involuntary swerving of the car to avoid the cat

nor purposed swerving the car to avoid the cat is not negligence as a matter of law, so you are to determine whether her negligence as you found the same to be in answer to question 4 was a cause of the accident." (Referring to question 6 of special verdict.)

The complaint is that the instructions took from the jury the consideration of plaintiff's negligence in driving her car so as to avoid the cat; that that and not the defect in the highway was the cause of the accident; that the sudden turning was an intervening independent cause over which the town had no control, and which the town could not be expected to foresee. In support of this contention, defendant cites cases of which *McFarlane v. Sullivan,* 99 Wis. 361, 74 N. W. 559, 75 N. W. 71, is fairly representative. That was the case of a plaintiff injured while driving on a defective road by reason of the breaking of one of the reins and the consequent turning of the horse. The trial court refused to submit the case to the jury and directed a verdict. The direction was upon the ground that the negligence of the town was not the proximate cause of the injury, but that the breaking of the line, an intervening cause, was. The supreme court affirmed the judgment criticising and distinguishing the cases of *Dreher v. Fitchburg,* 22 Wis. 675, and *Houfe v. Fulton,* 29 Wis. 296. In the opinion written in the case, it was said: "As indicated, the alleged defect in the highway was not a proximate nor a concurring cause, but a subsequent and remote cause." It is evident that that case goes further than ruling on contributory negligence; it apparently holds that where one deviates from a part of the way which is not defective and is injured by a defect in another part of the way, the defective condition is not a proximate cause of the injury. The doctrine of that case, if it goes to the extent claimed, is out of harmony with many rulings by this court both before and since that decision was made. A "pure accident," for instance, is a new and independent cause, while an acci-

dental incident may bring one under the influence of another's negligence and not be a new and independent cause. In the latter situation, the negligent party has failed in a duty to protect an interest entitled to protection. If the "pure accident" is a new and independent cause intervening between a remote act and the result, it should bear the full responsibility, but if the so-called intervening cause is only one of the usual and to be foreseen events, although somewhat accidental in nature, it ought not to relieve anyone from the liability the law intends to visit upon his failure to exercise ordinary care. A distinction exists between a new, independent, and intervening cause and a momentary disturbance of the usual. In *Dreher v. Fitchburg, supra,* plaintiff was injured by reason of a defect in a highway together with a defect in the axle of a separator. The trial judge instructed the jury as summarized in the opinion:

"The plaintiff might recover notwithstanding such other cause contributed to the injury, unless such other cause was attributable to some want of ordinary care on the part of the plaintiff, provided they found that the accident would not have occurred except for the defect in the highway."

Under that charge of the court, if that plaintiff had been negligent as was the plaintiff here, there could have been no recovery, yet the law as to comparative negligence in force today would negative those instructions dealing with the negligence of that plaintiff.

In *Houfe v. Fulton, supra,* a plaintiff was injured when the sleigh in which he was riding was drawn over the edge of a bridge by a horse which was momentarily out of control, the bridge having no guardrail on it. In reversing a rule granting a nonsuit, the supreme court held that the rule as to uncontrollable horses did not apply because the loss of control was only momentary. It was said:

"The decided weight of authority is, that if, besides the defect in the way, there is another proximate cause of the

injury, contributing directly to the result, but which cause is not attributable to the fault or negligence of the plaintiff nor of any third person, and is unconnected with the fright or unmanageableness of the team, caused as above stated, the town is liable, provided the jury shall determine that the damage would not have been sustained but for the defect in the way."

Here again, the case in hand could be sustained under our comparative negligence law. A study of the cases since the *McFarlane Case* treating with causal relationship between negligence and final result show the impracticability of that rule as interpreted by defendant. *Rusczck v. Chicago & N. W. R. Co.* 191 Wis. 130, 210 N. W. 361; *Majestic Realty Corp. v. Brant,* 198 Wis. 527, 224 N. W. 743; *Osborne v. Montgomery,* 203 Wis. 223, 234 N. W. 372; *Swiergul v. Suamico,* 204 Wis. 114, 235 N. W. 548; *Sandeen v. Willow River Power Co.* 214 Wis. 166, 252 N. W. 706.

The rule as to a negligent intervening act is stated in 2 Restatement, Torts, p. 1196, § 447. Although it refers in terms only to the act of a third person, it is said in the *Comment* to apply as well to acts done by the plaintiff:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted. . . ."

Considering the present case in the light of this rule, it is seen that plaintiff's act, even though negligent, is neither so unforeseeable nor so extraordinary as to supersede as the cause of the injury the condition of the highway caused by defendant's negligence.

The sudden turning into a part of the roadway which was not in proper condition for travel was or was not negligence on plaintiff's part according to whether she was exercising the proper degree of care, and the question may fairly be resolved as it was by the trial court into an inquiry as to speed and lookout. The jurors' approach to a determination of the cause or causes of the injury is important, and their attention should be called to all the duties resting upon plaintiff as she drove along the highway. The duty of ordinary care on her part would, under the circumstances here present, be met fully if she drove at a proper speed and kept a proper lookout. She knew of the defect in the highway and its location; she was bound to observe this. If, in response to an impulse (see *Olson v. Hermansen,* 196 Wis. 614, 220 N. W. 203) or with deliberation, she turned out of a safe path rather than stop because suddenly confronted by an obstacle, or because she realized she could not stop in time, her difficulty would be traceable to her failure to see where she was going, or to her speed, or to both. Her turning aside for the reason she assigned does not make or mar her position any more than would be the case had she turned to avoid driving in a rut that was present. The matter was sufficiently presented to the jury, and no prejudicial error arises.

*By the Court.*—Judgment affirmed.